IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CEDAR FOOD MARKET 7, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil No. 18-3470 (RMB/KMW) <br><br> **OPINION** |

APPEARANCES:

JOHN P. MORRIS, ESQ.
142 West Broad Street
P.O. Box 299
Bridgeton, New Jersey 08302
    *Attorney for Plaintiff*

OFFICE OF THE UNITED STATES ATTORNEY
DISTRICT OF NEW JERSEY
By: Ben Kuruvilla, AUSA
970 Broad Street, Suite 700
Newark, New Jersey 07102
    *Attorneys for Defendant*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    The United States Department of Agriculture, Food and Nutrition Service ("FNS"), which administers SNAP[1] (commonly known as the food stamp program), decided to permanently disqualify Plaintiff, Cedar Food Market 7, Inc., from participating in SNAP after finding that Cedar Food Market had trafficked in SNAP

---

[1] "Supplemental Nutrition Assistance Program."

benefits.[2]  Pursuant to 7 U.S.C. § 2023(a)(13), Plaintiff seeks judicial review of FNS' final determination.

FNS moves for summary judgment, asserting that no reasonable factfinder could find on this record that Cedar Food Market did not traffic in SNAP benefits.  Cedar Food Market has filed no opposition to the motion.[3]  For the reasons stated herein, the motion will be granted.

I. **FACTUAL BACKGROUND**

"Cedar Food Market is a small grocery store located at 1125 Arctic Avenue in Atlantic City, New Jersey."  (Defendant's Statement of Material Facts[4], "SMF," ¶ 4)  It "became an authorized

---

[2] Trafficking in food stamps typically involves exchanging food stamps for cash-- often less cash than the face value of the stamps.  See, e.g., Freedman v. U.S. Dept. of Agriculture, 936 F.2d 252, 253 (3d Cir. 1991) ("Between November 12 and December 15, 1987, the [store] clerk . . . trafficked in food stamps . . . on four separate occasions, purchasing stamps with a total value of $1,500 for $750 from an undercover investigator for the [FNS].").  As SNAP benefits are now provided electronically on electronic benefit transfer ("EBT") cards, rather than through the use of actual stamps, trafficking usually means "using the SNAP card as a bank debit card for cash not groceries." Famous Int'l Mkt. v. United States, 2018 WL 3015249 at *1 (E.D. Pa. June 15, 2018); see generally, 7 C.F.R. 271.2 (providing six definitions of "trafficking," including, "effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food.").

[3] Cedar Food Market's opposition was due June 17, 2019.

[4] FNS' Statement of Material Facts has not been opposed because Cedar Food Market has filed no opposition at all to the instant motion.  Accordingly, facts contained in the Statement of Material Facts are "deemed undisputed for purposes of the summary judgment motion."  L. Civ. R. 56.1(a).

2

SNAP retailer on July 25, 2001." (Id., ¶ 6) "In 2017, the FNS Retailer Operations Division began an investigation into Cedar Food Market because the agency's "ALERT" System[5] indicated that the store's EBT data contained patterns consistent with possible EBT trafficking violations between February 2017 and June 2017." (Id., ¶ 8)

On May 11, 2017, a FNS investigator visited Cedar Food Market and observed that it "was a moderately-stocked small grocery store with staple foods that included canned goods, rice, pasta, bread, ice cream, butter, milk, some fresh produce, deli meat & cheese sold by the pound, and eggs." (SUF, ¶¶ 9, 11)

FNS also conducted a review of Cedar Food Market's SNAP EBT data from the relevant time period which resulted in the identification of 165 "suspicious transactions." (SUF, ¶ 12) Of the 165 transactions, 17 sets of transactions were deemed suspicious because they "involved rapid and repetitive transactions in a short period of time (mostly within a 24-hour period) from the same households." (Id., ¶¶ 13-14)[6] Another 119 transactions were deemed suspicious because they "were excessively large-- specifically, at least 300% larger-- as compared to the

---

[5] The ALERT system "is designed to detect suspicious SNAP benefit usage indicative of fraud or SNAP benefit trafficking." (SUF, ¶ 7)

[6] For example, "one household account conducted five transactions within a 24-hour period in the amounts of $49.85, $30.26, $24.07, $40.35 and $54.50." (SUF, ¶ 15)

average convenience store transaction in New Jersey." (Id., ¶ 17-18)  In addition to this data being inherently suspicious for the reasons already stated, FNS compared the data to three comparable grocery stores and found Cedar Food Market's data patterns to be "abnormal" relative to the other stores.  (Id., ¶¶ 20-21)

Moreover, "FNS found that the appearance, quality and quantity of products at Cedar Food Market did not warrant SNAP recipients conducting so many transactions at the store."  (SUF, ¶ 23)  It "also reviewed the shopping patterns of four selected households who were involved in suspicious transactions during the period under review and found that all of these households were also shopping at larger and better-stocked stores."  (Id., ¶ 24)  Lastly, "FNS noted that it seemed unreasonable for a household to spend such a large amount of SNAP benefits at [Cedar Food Market], when it had access to larger, better-stocked, and presumably less expensive grocery options."  (Id., ¶ 25)

Based on all of this evidence, FNS charged Cedar Food Market with trafficking in SNAP benefits on September 19, 2017.  (SUF, ¶¶ 26, 28)  With the assistance of an attorney retained to represent it in the matter, Cedar Food Market replied to the charge by submitting two documents to FNS: (1) a declaration of Issa Nammour, one of the store's two "corporate officers" (Id., ¶ 5); and (2) a copy of "the FNS Training Guide for Retailers," a document prepared by FNS, "which Issa claimed they 'review carefully.'" (Id., ¶ 41)

Nammour's Declaration "states categorically that 'at no time have we ever tolerated any kind of trafficking whatsoever.'" (SUF, ¶ 33) Notably, the Declaration does not challenge the accuracy of the transaction data; rather, it provides the following explanations for the suspicious transactions:

> (a) the Store "had observed an individual attempting to purchase items for others using SNAP benefits and were also informed that another person approached customers outside the Store offering to buy food for them with his SNAP benefits in exchange for a discount," but the Store stopped them from continuing their scheme by "'asking people for their I.D. and putting them on notice.'" (SUF, ¶¶ 34, 35)
>
> (b) "the Store had a spike in volume for the months of February, March, April, and May which was attributable to special promotions at reduced prices in order to encourage a higher volume of transactions" (Id., ¶ 36); and
>
> (c) "the Store was the only store in the area selling a 'large variety of staple foods at reasonable prices' and that many of their customers are older or disabled and shop several times per day to be able to carry their purchases home because they do not own motor vehicles" (Id., ¶ 38).[7]

FNS considered this evidence and determined:

> (a) "that typically [individuals trying to use SNAP benefits to purchase food for others in exchange for cash] would also occur at neighboring stores, and those stores were not displaying the same transaction patterns; instead only Cedar Food Market's SNAP transactions were displaying such patterns. (SUF, ¶ 44); and "if this alleged conduct had occurred and the Store addressed it, . . . the

---

[7] The Declaration also states that "'subsidized housing people with drug problems'" made large purchases multiple times a day because they "'mismanage their money.'" (SUF, ¶ 39)

5

>conduct would only have caused a few days' worth of suspicious transactions, not several months, as reflected in the data." (Id., ¶ 46);
>
>(b) "Cedar Food Market did not submit any documentary evidence supporting Issa's assertion that Cedar Food Market offered special promotions that caused a spike in transactions during the review period. Moreover, no special promotions were observed during the site visit. Without such documented evidence, including any EBT or store register receipts or promotional advertising material, FNS could not substantiate Issa's statements." (Id., ¶ 43);
>
>(c) "the Store was located within 1/4 mile of 4 convenience stores, 2 small grocery stores, 1 medium grocery store, and 2 combination grocery stores, and within a 1 mile radius, there was 39 traditional authorized retailers where SNAP households can and did shop, but none of these displayed the same EBT transactions patterns as the Store" (Id., ¶ 45); and "the Store's EBT customers were also shopping at [these stores]-- demonstrating that these customers did not have difficulty traveling to different stores." (Id., ¶ 48)

Accordingly, FNS concluded that the suspicious transactions were not "sufficiently explained" and were "indicative of trafficking." (SUF, ¶¶ 42, 51) On October 10, 2017, FNS issued a Determination Letter informing Cedar Food Market that FNS had concluded that the store had engaged in trafficking. (Id., ¶ 52)

Cedar Food Market, through its attorney, duly invoked its right to administrative review of the determination. An Administrative Review Officer "reviewed all of the information

6

submitted by Cedar Food Market[8], and on February 8, 2018, FNS issued its final agency decision, which concluded that permanent disqualification [from the SNAP program] was appropriate." (SUF, ¶ 64)  This suit followed.

## II. LEGAL STANDARD

When an "aggrieved" party seeks "judicial review" of an adverse "final determination" with regard to participation in SNAP, 7 U.S.C. § 2023(a)(13), "[t]he suit in the United States district court . . . shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." § 2023(a)(15).  Thus, although this Court is reviewing a final agency determination, the governing statute provides that this case shall proceed in the same manner as a typical civil action.[9]  Therefore, all of the procedural mechanisms under the Federal Rules of Civil Procedure are generally available, including-- as relevant to the instant

---

[8]  Cedar Food Market relied on the evidence discussed above and a declaration from an employee. (SUF, ¶¶ 61-62)  However, the employee's declaration stated that he or she had worked at Cedar Food Market for only one month in March of 2016, i.e., before the time period during which the store was charged with trafficking. (Administrative Record, p. 215)  Moreover, the one-page declaration only stated, in relevant part, that an unidentified supervisor "periodically" cautioned employees "to be on the lookout" for patrons who appear to be involved in trafficking. (Id.)

[9]  Although the statute does not limit this Court's review to facts contained in the administrative record, Freedman, 926 F.2d at 261, in this case, no discovery was taken and the parties "proceeded directly to summary judgment based on the administrative record." (Defendant's Moving Brief, p. 20 n.6)

7

motion-- Federal Rule of Civil Procedure 56. Freedman, 926 F.2d at 261 ("de novo review [under § 2023(a)(15)] is compatible with a summary judgment disposition if there are no material facts in dispute. . . . In reality, an ordinary private civil action is a de novo proceeding in the sense that the court makes an original determination of the law and the facts but such a case may, when appropriate, be resolved on summary judgment.").

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

"[W]hen a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord, Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")). Failure to sustain this burden will result in entry of judgment for the moving party.

The same basic legal analysis applies when a summary judgment motion is unopposed, Anchorage Associates v. Virgin Islands Board of Tax Review, 922 F.2d 168 (3d Cir. 1990), however, the material facts put forth by the movant are deemed undisputed pursuant to L. Civ. R. 56.1(a) ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

**III. ANALYSIS**

"It is [] well established that the plaintiff challenging the administrative action has the burden of proving by a preponderance of the evidence that the charged SNAP violation did not occur." Atl. Deli & Grocery v. United States, 2011 WL 2038758 at *4 (D.N.J. May 23, 2011) (Simandle, D.J.) (citing authorities).[10] In

---

[10] See also, Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 378 (1st Cir. 2018)("All of the courts of appeals that have addressed the burden-of-proof issue under Section 2023 have placed the burden of proof on the party challenging the USDA's finding of liability. We join those courts and hold that when a store challenges the USDA's determination that the store trafficked in SNAP benefits, the store bears the burden of proving by a preponderance of the evidence that its conduct was lawful.")(citing decisions from the 7th, 9th, 6th, and 5th Circuits); SS Grocery, Inc. v. U.S. Dep't of Agric., 340 F. Supp.3d 172, 180 (E.D.N.Y. 2018)("Plaintiffs . . . bear the burden of proving by a preponderance of the evidence that the agency's action was invalid.").

9

this case, Cedar Food Market has filed no opposition to FNS' Motion for Summary Judgment, and therefore it has come forward with no particular evidence that it did not traffic in SNAP benefits.

Moreover, the evidence in the administrative record-- which is undisputed here-- does not support a finding by a preponderance of the evidence that Cedar Food Market did not traffic in SNAP benefits. As set forth above, the EBT data demonstrated patterns consistent with SNAP trafficking.[11] Cedar Food Market's explanations for these patterns are, as FNS found, either incomplete or inconsistent with the evidence, and therefore insufficient to defeat summary judgment. See Irobe, 890 F.3d at 380 ("The large number of aberrational transactions reflected in the Store's EBT database are adequate to ground a strong inference of trafficking, especially given the Store's characteristics.

---

[11] See, e.g., Negash v. United States, 772 F. App'x 34, 36-37 (4th Cir. 2019) ("the USDA rightfully concluded that there is no logical explanation for 72 individuals spending over $100 on convenience store items when Appellants' store does not have a single shopping cart or basket [and] households were visiting larger grocery stores in addition to Appellants' store."); Irobe, 890 F.3d at 379 (unusually "high-dollar SNAP transactions" and "multiple purchases in quick succession"); Cheema v. United States, 365 F. Supp.3d 172, 185-187 (D. Mass. 2019) (multiple transactions made from the same EBT account in short time frames, unusually large transactions); SS Grocery, 340 F. Supp.3d at 181 (recipients making multiple transactions in unusually short time frames, recipients making excessively large purchase transactions); McClain's Mkt. v. United States, 214 F. App'x 502, 505 (6th Cir. 2006)("McClain's has simply offered no evidence to explain the volume, frequency, or size of the transactions identified by the government.").

10

While that inference is rebuttable, the allocation of the burden of proof dictates that the Store must point to some significantly probative evidence to rebut it (and, thus, fend off summary judgment).").

Cedar Food Market has failed to sustain its summary judgment burden of putting forth evidence to support its claim that FNS' determination was invalid.[12] Accordingly, the Motion for Summary Judgment will be granted.

**IV. CONCLUSION**

For the foregoing reasons, FNS' Motion for Summary Judgment will be granted. An appropriate Order shall issue on this date.

Dated: December 19, 2019        __s/ Renée Marie Bumb_____
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE

---

[12] Cedar Food Market's Complaint does not alternatively assert that even if FNS' determination as to trafficking was valid, the sanction of permanent disqualification was arbitrary and capricious. See Atl. Deli & Grocery, 2011 WL 2038758 at *5 ("The standard of review for the imposition of a sanction under SNAP is whether the Secretary's action was arbitrary or capricious."). Nonetheless, FNS moves for summary judgment on this issue. Assuming *arguendo* for purposes of this motion only, that Cedar Food Market does challenge the severity of the sanction imposed, the Court holds that FNS correctly concluded that the record did not contain "*substantial evidence* that [the] store . . . had an effective policy and program in effect to prevent [trafficking]," 7 U.S.C. § 2021(b)(3)(B) (emphasis added), and therefore did not arbitrarily or capriciously impose the sanction of permanent disqualification from the SNAP program.